UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BEATRIZ and RODRIGO CISNEROS, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. CIV-25-42-R |
| STATE FARM FIRE AND CASUALTY COMPANY, et al., | ) |
| Defendants. | ) |

## ORDER

Plaintiffs have filed a Motion to Remand [Doc. No. 15] seeking to remand this case to the District Court of Oklahoma County. The motion is fully briefed [Doc. Nos. 18, 19, 22] and at issue.[1]

## PROCEDURAL BACKGROUND

Plaintiffs initiated this action in state court against State Farm and the Jim Campos Agency, Inc. Plaintiffs assert claims for breach of contract, bad faith and constructive fraud/negligent misrepresentation against State Farm based on its alleged wrongful denial of their insurance claim. Plaintiffs also assert claims against the Campos Agency for negligent procurement of insurance and constructive fraud/negligent misrepresentation.

State Farm removed the case contending that the Campos Agency was fraudulently joined, and its non-diverse citizenship may therefore be disregarded for purposes of

---

[1] The Cout has also reviewed Plaintiffs' Notice of Supplemental Authority [Doc. No. 23].

establishing diversity jurisdiction. Plaintiffs seek to remand the action, arguing that State Farm has not met its burden of establishing fraudulent joinder.

**STANDARD**

The standard for establishing that a defendant has been fraudulently joined is a difficult one: "the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (quoting *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir.2011). This standard "is more exacting than that for dismissing a claim under Fed.R.Civ.P. 12(b)(6)" and requires all factual disputes and all ambiguities in the controlling law to be resolved in the plaintiff's favor. *Montano v. Allstate Indem.*, 211 F.3d 1278 (10th Cir. 2000) (unpublished);[2] *see also Dutcher,* 733 F.3d at 988. "[R]emand is required if any one of the claims against the non-diverse defendant…is possibly viable." *Montano*, 211 F.3d at *2.

Although the fraudulent joinder standard presents a "high hurdle," *Dutcher*, 733 F.3d at 989, it is not an insurmountable one. Where a defendant's "non-liability is…established as both a matter of fact and law," the defendant's joinder is fraudulent and remand is appropriately refused. *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964). Further, "it is well settled that upon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond the pleadings to determine if the

---

[2] Unpublished decisions are cited for their persuasive value. *See* Fed. R. App. P. 32.1.

joinder, although fair on its face, is a sham or fraudulent device to prevent removal." *Smoot v. Chicago, R.I. & P. R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967). But courts must be careful not to "pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." *Id.* at 882.

## DISCUSSION

Plaintiffs' claims are premised on an alleged scheme by State Farm and its captive insurance agents to underpay and deny hail damage claims. *See* Pet. [Doc. No. 1-5] ¶¶ 1-4. The scheme purportedly works as follows: the agent sells an insurance policy to the customer and in doing so "expressly and/or impliedly represents" that the property meets State Farm's underwriting guidelines, the replacement cost value the agent calculated is accurate, and the policy covers wind and hail damage. *Id.* at ¶ 4. State Farm issues the policy, the insured suffers a loss from wind or hail, and State Farm then denies the claim based on an undisclosed and narrow definition of hail damage and a variety of bad faith claims handling tactics. *Id.*

Plaintiffs allege they were subjected to the scheme in this case. They contacted the Campos Agency "to procure full replacement cost homeowners insurance coverage" and "requested Agent obtain a replacement cost policy that would provide coverage for the Insured Property in the event of a loss." Pet. ¶¶ 25. Plaintiffs "expressly and/or inherently" disclosed concerns and insurance needs" to the Campos Agency, who was allegedly "aware that the Plaintiff [sic] needs coverage under a policy that would fully replace the Insured Property's roof in the event of a loss, without exclusion of any weather-related losses." *Id.*

3

The Campos Agency then independently calculated the policy's coverage, purportedly insuring it at 100% of its replacement cost value, using State Farm's valuation software. *Id.* In doing so, the Campos Agency never inspected the property, never told Plaintiffs the property had pre-existing damage or other conditions that would exclude it from or make it ineligible for replacement cost coverage, never told Plaintiffs that the value and coverage limits did not represent 100% insurance to value, and never disclosed that State Farm utilized narrow definitions of hail damage.

Plaintiffs have been insured with State Farm for over ten years. *Id.* In 2023, Plaintiffs submitted a claim to State Farm for storm damage. State Farm allegedly prepared a low-ball estimate to replace a few wind damaged shingles but concluded there was no hail damage to the roof. *Id.* ¶ 40.

The allegations and arguments in this case are almost identical to the allegations in another case where this Court recently denied remand. *See Barlow v. State Farm and Casualty Co. et al.*, CIV-25-44 (W.D. Okla.). After resolving all disputes in Plaintiff's favor, the Court again concludes that State Farm has met its burden of showing with complete certainty that Plaintiffs do not have a potentially viable claim for negligent procurement of insurance or negligent misrepresentation/constructive fraud against the Campos Agency.

### A. Negligent Procurement of Insurance

Oklahoma law recognizes that an insurance agent has a "duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance." *Swickey v. Silvey Co.*, 979 P.2d 266, 269 (Okla. Civ. App. 1999). "This duty rests, in part, on

specialized knowledge about the terms and conditions of insurance policies generally." *Rotan v. Farmers Ins. Grp. of Companies, Inc.*, 83 P.3d 894, 895 (Okla. Civ. App. 2004) (internal quotations marks and brackets omitted). An insurance agent can therefore be liable to the insured in negligence "if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss." *Swickey*, 979 P.2d at 269.

However, Oklahoma courts are in agreement that "the scope of the agent's duty to use reasonable care, skill, or diligence in the procurement of insurance" is limited to needs disclosed by the insured. *Rotan*, 83 P.3d at 895. Agents "do not have a duty to advise an insured with respect to his insurance needs" and "a general request for adequate protection and the like does not change this duty." *Id.* (internal quotation marks and brackets omitted). Thus, "[t]o discharge their duty to act in good faith and use reasonable care, skill, and diligence in the procurement of insurance, including use of their specialized knowledge about the terms and conditions of insurance policies, insurance agents need only offer coverage mandated by law and coverage for needs that are disclosed by the insureds, and this duty is not expanded by general requests for 'full coverage' or 'adequate protection.'" *Id. See also Cosper v. Farmers Ins. Co.*, 309 P.3d 147, 149 (Okla. Civ. App. 2013) (holding that plaintiff had not stated a negligence claim where agent calculated a replacement cost value that exceeded the coverage needed because the agent "did not fail to procure insurance" and "Plaintiffs did not allege that they requested a specific coverage limit and Defendants disregarded the request and issued a policy in some other amount"); *Mueggenborg v. Ellis*, 55 P.3d 452, 454 (Okla. Civ. App. 2002) (holding that plaintiffs had not stated a negligence claim where the agent did not advise then about the availability of

5

higher limits because plaintiffs simply requested "adequate protection" which is a "typical request by an insured" and permitting such a conversation to expand the scope of the duty "would in substance make the agent a blanket insurer for his principal").

In this case, Plaintiffs allege that they requested a "replacement cost policy that would provide coverage for the Insured Property, in the event of a loss." According to Plaintiffs' own allegations, this is exactly what they received: an all-risk replacement cost policy that provides coverage for any accidental direct physical loss, including wind and hail damage. Pet. ¶¶ 4(c), 31-33. Apart from requesting a full replacement cost policy, Plaintiffs do not identify any specific coverage needs that were disclosed to and then disregarded by the agent.[3]

This is not a situation where Plaintiffs' insurance claim was denied because the type of policy, type of coverage, or coverage limit was different than what was requested. *See, e.g., Yeary v. Safeco Ins. Co. of Am.,* No. 22-CV-0250-CVE-SH, 2022 WL 3447120 (N.D. Okla. Aug. 17, 2022) (finding that the plaintiff stated a viable claim against agent where they requested a homeowner's policy that would replace their fishing dock in the event of

---

[3] This Court has remanded other cases involving negligent procurement and constructive fraud claims against State Farm insurance agents. The Court finds it unnecessary, at this time, to revisit any of the legal conclusions reached in those cases because the allegations presented in this action are different. Plaintiffs in this case do not plead that the insurance agent made affirmative statements about the scope of coverage, the condition of the property, or the agent's underwriting duties. Instead, they primarily rely on "inherent" or "implied" representations that insurance agents purportedly make every time they market, bind, and sell a policy. *See, e.g.* Pls.' Br. at 1 ("In every instance of the Scheme, State Farm's captive agents inherently represent to the insured—by virtue of the act of marketing, selling, and binding State Farm replacement cost insurance coverage—that the property at issue meets State Farm's underwriting guidelines, qualifies for the coverage stated in the policy, and is free from any defect that would negate that coverage.").

a loss but policy procured did not mention the dock and contained numerous exclusions that did not provide realistic coverage for the dock). Rather, Plaintiffs indisputably received the replacement cost value policy they requested. Plaintiffs cannot show that, "by the agent's fault, insurance [was] not procured as promised," *Swickey*, 979 P.2d at 269, and they therefore do not have a potentially viable claim for negligent procurement of insurance against the Campos Agency. *See Rain Drop Found., Inc. v. State Farm Fire & Cas. Co.*, No. 24-1101-D, 2025 WL 582562, at *4 (W.D. Okla. Feb. 21, 2025) (no viable claim against agent because "Plaintiff's alleged damages arose, not because of the type of insurance procured, but because State Farm refused to replace Plaintiff's roof"); *Steinkamp v. State Farm Fire & Cas. Co.*, No. CIV-22-00047-PRW, 2023 WL 11920886, at *2 (W.D. Okla. Sept. 29, 2023) (no viable claim against agent because "Plaintiff's claim against State Farm depends upon what damage her roof sustained, not the terms of her policy"); *Gellner v. Progressive N. Ins. Co.*, No. 21-CV-0401-CVE-JFJ, 2021 WL 5789146, at *3 (N.D. Okla. Dec. 7, 2021) (no viable claim against agent because the policy procured provided the requested collision coverage and the dispute concerns "the cause of the damage to the boat, not the lack of collision coverage in the insurance policy"); *Smith v. Allstate Vehicle & Prop. Ins. Co.*, No. CIV-14-0018-HE, 2014 WL 1382488, at *2 (W.D. Okla. Apr. 8, 2014) (no viable claim against agent where "plaintiffs acknowledge that coverage was obtained and do not allege that the amount of coverage was not what they had requested"); *Rivera v. Hartford Ins. Co. of the Midwest*, No. CIV-14-1082-HE, 2014 WL 7335320, at *2 (W.D. Okla. Dec. 19, 2014) (no viable claim against the agent because "plaintiffs do

7

not allege in their complaint that they actually requested specific coverage which Hartford failed to provide").

### B. Negligent Misrepresentation/Constructive Fraud

Oklahoma defines constructive fraud as "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, … by misleading another to his prejudice, …." Okla. Stat. Ann. tit. 15, § 59(1). Such a duty "may arise if a party selectively discloses facts that create a false impression." *Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1181 (10th Cir. 2008) (applying Oklahoma law). Put another way, "[c]onstructive fraud is the concealment of material facts which one is bound under the circumstances to disclose." *Bankers Tr. Co. v. Brown*, 107 P.3d 609, 613 (Okla. Civ. App. 2005).

Here, Plaintiffs identify several misrepresentations in support of their constructive fraud claim, but all fail for one reason or another. First, Plaintiffs assert that by calculating the replacement cost value, the Campos Agency "inherently conveyed" that the coverage limit was accurate and represented 100% insurance to value. Pet. ¶ 25. But Plaintiffs admit that they were not underinsured, and they do not contend that they were overinsured. Thus, "any issue as to coverage amounts did not lead to any of the damages that plaintiffs assert via their claim for damage to the roof." *Goebel v. State Farm Fire & Cas. Co.*, No. CIV-22-0882-HE, 2023 WL 11883977, at *4 (W.D. Okla. Aug. 7, 2023).

Plaintiffs also assert the Campos Agency misrepresented that the property met all underwriting requirements, all property inspections occurred, and the property was eligible for full replacement cost coverage. Plaintiffs further assert the Campos Agency never

8

disclosed that the property had a defect, pre-existing damage, or other condition that would limit coverage. Notably, Plaintiffs do not identify any express statements by the Campos Agency regarding its underwriting duties or the property's condition but instead suggest that these representations were implied by the act of calculating the RCV, binding coverage, or procuring the policy.

Accepting for the sake of argument that an agent impliedly makes such representations to the insured when it takes these actions, these representations do not have a causal connection to the damage alleged here. State Farm issued Plaintiffs a replacement cost policy, so the property *did* meet the underwriting guidelines and *was* eligible for replacement cost coverage. *See Steinkamp*, 2023 WL 11920886, at *4 ("This cannot be a misrepresentation because there is no indication that Plaintiff's property did not meet State Farm's underwriting requirements."). Further, there is no indication that the coverage values are wrong or that the property had some pre-existing condition that negated or limited coverage for the roof. The policy provides coverage for hail damage, but the parties disagree about whether hail damage on the roof was present. Thus, any "implied" representations by the agent about the property's condition or its eligibility for a replacement cost value policy were either true or not the cause of Plaintiffs' losses. *See Rain Drop Found., Inc. v. State Farm Fire & Cas. Co.*, No. 24-1101-D, 2025 WL 582562, at *5 (W.D. Okla. Feb. 21, 2025) ("[T]he Court is unable to make out a causal nexus between [the agent's] actions at the procurement stage and Plaintiff's alleged prejudice at the coverage determination stage.").

Last, Plaintiffs contend the Campos Agency failed to disclose State Farm's bad faith claims handling tactics or its narrow internal definition of hail damage. "Although an agent may be held accountable for failing to answer an insured's coverage questions accurately, he or she generally is not obligated to explain the policy terms to the insured." *Smith*, 2014 WL 1382488, at *3. Plaintiffs do not identify any affirmative statements by the Campos Agency concerning State Farm's claims handling or policy interpretation. Plaintiffs requested a policy that would provide coverage "in the event of a loss." "Because State Farm found that no covered loss occurred, there is no factual basis that [the Campos Agency's] representations to Plaintiff were untruthful." *Steinkamp*, 2023 WL 11920886, at *3. Under these circumstances, Plaintiffs cannot establish that the Campos Agency breached a duty of full disclosure. *See id.*

## CONCLUSION

State Farm has met its burden of establishing that Plaintiffs are unable to establish a cause of action against the Campos Agency. The Court concludes that the Jim Campos Agency, Inc. is a fraudulently joined defendant, and its citizenship must be disregarded for purposes of determining subject matter jurisdiction. Plaintiffs' Motion to Remand [Doc. No. 15] is therefore DENIED. The claims against this defendant are dismissed without prejudice.

IT IS SO ORDERED this 18th day of April, 2025.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE